UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGINA QUERUEL,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　Defendant. | Case No. 18-cv-02556-JSC<br><br>**ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 21, 23 |

Plaintiff Georgina Queruel seeks social security benefits for a combination of physical and mental impairments, including: rheumatoid arthritis, post-traumatic stress disorder, and panic disorder. (*See* Administrative Record ("AR") 220.) Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security ("Commissioner" or "Defendant") denying her benefits claim. (Dkt. No. 1.)[1] Before the Court are Plaintiff's and Defendant's motions for summary judgment.[2] (Dkt. Nos. 21 & 23.) After careful consideration of the parties' briefing, the Court DENIES Plaintiff's motion because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error. The Court accordingly affirms the ALJ's decision and GRANTS Defendant's motion for summary judgment.

**LEGAL STANDARD**

A claimant is considered "disabled" under the Social Security Act if she meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

---

[1] Record citations outside of the administrative record are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.
[2] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 2 & 7.)

First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that she is unable to do her previous work and cannot, based on her age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: "(1) whether the claimant is 'doing substantial gainful activity'; (2) whether the claimant has a 'severe medically determinable physical or mental impairment' or combination of impairments that has lasted for more than 12 months; (3) whether the impairment 'meets or equals' one of the listings in the regulations; (4) whether, given the claimant's 'residual functional capacity,' the claimant can still do his or her 'past relevant work'; and (5) whether the claimant 'can make an adjustment to other work.'" *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 20 C.F.R. §§ 404.1520(a), 416.920(a)).

An ALJ's "decision to deny benefits will only be disturbed if it is not supported by substantial evidence or it is based on legal error." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks and citation omitted). As explained by the Ninth Circuit, "[s]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.* In other words, if the record "can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014) (internal quotation marks and citation omitted); *see also Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997) ("[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled."). However, "a decision supported by substantial evidence will still be set aside if

the ALJ did not apply proper legal standards." *Id.* A court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

**PROCEDURAL HISTORY**

In July 2014, Plaintiff filed claims for Social Security Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416, 423, (AR 106), and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1382(c), (AR 107). Plaintiff alleged disability beginning on July 10, 2014. (AR 262.) She completed her applications on August 25, 2014. (AR 197-205.) The Commissioner denied Plaintiff's claims initially and on reconsideration. (AR 134, 142.) Plaintiff then filed a request for a hearing before an ALJ, and on January 4, 2017, ALJ John Heyer held a hearing during which both Plaintiff and vocational expert ("VE") Robin Scher testified. (AR 36-73.)

**I.     The ALJ's Findings**

On March 3, 2017, the ALJ issued a written determination denying Plaintiff's claims. (AR 20-31.) The ALJ used the Social Security Administration's five-step sequential evaluation process for determining disability and concluded that Plaintiff was not disabled within the meaning of the Social Security Act based on the hearing testimony and other evidence of record.

At step one, the ALJ concluded that Plaintiff met "the insured status requirements of the Social Security Act through March 31, 2016," and had not engaged in substantial gainful activity since July 10, 2014, the alleged onset date. (AR 22.) At step two, the ALJ determined that Plaintiff's "rheumatoid arthritis and history of bilateral hand surgery" constitute "severe impairments." (*Id.*) The ALJ concluded, however, that Plaintiff's diagnosed "affective disorder, posttraumatic stress disorder with dissociative symptoms of depersonalization, panic disorder, and alcohol abuse disorder in remission" were "non-severe" impairments, "considered singly and in combination." (AR 22-23.) In reaching that conclusion, the ALJ considered "the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1)." (AR 23.) The ALJ thus

3

analyzed Plaintiff's ability to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace," and (4) adapt or manage herself. (*Id.*) The ALJ determined that Plaintiff's "medically determinable mental impairments cause no more than 'mild' limitation in any of the functional areas." (*Id.*)

At the third step, the ALJ concluded that Plaintiff "does not have an impairment or a combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (AR 24 (citing 20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).) In reaching this conclusion, the ALJ noted that "[n]o medical professional has opined that [Plaintiff's] impairments, considered separately or in concert meet or medically equal the listed impairment." (*Id.*) Further, the ALJ noted that the "state agency consultants have opined that they do not," and the "record supports that finding." (*Id.*)

At step four, the ALJ considered Plaintiff's residual functional capacity ("RFC") and concluded that Plaintiff retained the RFC "to perform a range of sedentary work" with the following limitations: "can lift 10 pounds, sit for six hours in an eight-hour day, stand for two hours in an eight-hour day, . . . frequently but not constantly use the hands for handling[,]" and "is limited to simple repetitive tasks." (AR 24-25.) The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 27.) The ALJ found that the objective medical evidence, Plaintiff's reported activities of daily living, and treatment history did not support her reported symptoms. (AR 27-28.)

As for the medical opinion evidence, the ALJ afforded "some" weight to the opinion of examining physician Dr. Calvin Pon, because it was consistent with the medical evidence. (AR 28.) Dr. Pon examined Plaintiff in November 2014 and his findings tracked the RFC discussed above, expect for his conclusion that Plaintiff could stand or walk for four hours during an eight-hour day. (*See* AR 327, Ex. 5F at 329.) The ALJ likewise afforded some weight to the opinion of state agency physician Dr. R. Ferrell who opined that Plaintiff's mental conditions were non-

4

severe and resulted in only mild restrictions. (*See* AR 99, Ex. 2A at 99.) The ALJ next considered Plaintiff's Global Assessment of Functioning ("GAF") scores and afforded them "little weight" because "[t]hey are based on a snapshot of [Plaintiff's] functioning, GAF ratings are not standardized, GAF scores are not designed to predict outcomes, and GAF ratings involve other factors besides the mental ability to perform basic work functions." (AR 28.) The ALJ then considered the medical source statement of Daniel Armstrong, DC. (*Id.*) The ALJ afforded Mr. Armstrong's statement "no weight," finding that Mr. Armstrong was "not a doctor or acceptable medical source" and he "did not provide a functionality assessment, but instead made a vague statement and included the word 'disability' without sufficient clinical support in the report or other evidence of record." (*Id.*) Similarly, the ALJ afforded no weight to the January 2017 medical source statement of Plaintiff's treating rheumatologist Dr. Mary Margaretten because she "did not submit a function-by-function assessment showing greater limits." (AR 29 (citing AR 608, Ex. 15F).) The ALJ did, however, afford some weight to Dr. Margaretten's April 2015 and November 2016 opinions, wherein she opined on the effect of Plaintiff's rheumatoid arthritis on her ability to work, and set forth a more limited RFC than that adopted by the ALJ. (*See* AR 367, Ex. 9F; 605, Ex. 14F.) Finally, the ALJ afforded no weight to the Access Institute mental health treatment providers' reports because he found them "vague and not supported by clinical findings in the overall medical record." (AR 29.)

The ALJ concluded the step four analysis by finding that Plaintiff was unable to perform her past relevant work.[3] (*Id.*) At step five, the ALJ determined that Plaintiff could perform other jobs "that exist in significant numbers in the national economy" based on the testimony of VE Scher. (AR 30.) In sum, the ALJ determined that Plaintiff was not "under a disability, as defined in the Social Security Act, from July 10, 2014, through the date of [the] decision." (AR 31.)

//

---

[3] The ALJ's decision includes a heading stating that Plaintiff "is *unable* to perform any past relevant work." (*See* AR 29 (emphasis added).) However, the analysis under that heading concludes that Plaintiff "*is able* to perform past relevant work," based on VE Scher's testimony. (*Id.* (emphasis added).) That assertion is incorrect. In response to the ALJ's hypotheticals regarding Plaintiff's RFC, VE Scher testified that Plaintiff was *unable* to perform her past relevant work. (AR 67.)

5

**II.     The Appeals Council**

On March 21, 2017, Plaintiff filed a request for review of the ALJ's decision. (AR 5.) The Appeals Council denied Plaintiff's request for review on March 6, 2018, making the ALJ's decision final. (AR 1-3.)

**III.    This Action**

Plaintiff commenced this action for judicial review on April 30, 2018, pursuant to 42 U.S.C. § 405(g). (Dkt. No. 1.) Plaintiff then moved for summary judgment, (Dkt. No. 21), and the Commissioner filed her cross-motion, (Dkt. No. 23).

## DISCUSSION

Plaintiff raises one argument in support of her motion: the ALJ committed reversible error by "failing to follow the 'slight abnormality' standard in finding that Plaintiff's major depressive disorder, panic disorder with agoraphobia, and post traumatic stress disorder were non-severe." (Dkt. No. 21 at 3.) Plaintiff's argument is essentially twofold: (1) the ALJ erred in determining at step two of the sequential analysis that Plaintiff's mental conditions were "non-severe"; and (2) the ALJ erred by not including Plaintiff's mental conditions in the RFC analysis. The Court addresses each argument in turn.

**I.      Severity Determination**

An impairment or combination of impairments is considered "severe" if it "significantly limit[s]" the plaintiff's "physical ability to do basic work activities." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal quotation marks and citation omitted). "Basic work activities are abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* (internal quotation marks and citations omitted). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." *Id.* (internal quotation marks and citations omitted).

Here, the ALJ did not err in failing to find that Plaintiff's mental conditions constitute severe impairments. As previously discussed, the ALJ concluded that Plaintiff's mental impairments, "considered singly and in combination," were medically determinable but non-

6

severe because they produced only mild limitations in the four relevant areas for mental functioning. (*See* AR 22-24 (considering "the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1)" known as the "paragraph B criteria").) In addressing the paragraph B criteria for mental functioning, the ALJ cited Plaintiff's own function report, (*see* AR 227, Ex. 3E), the Psychiatric Review Technique forms submitted by the State agency mental health specialists, (*see* AR 124-31, Ex. 6A), and the "unremarkable or normal findings upon mental exam" conducted by Dr. Faith Tobias in October 2014, (*see* AR 324-26, Ex. 4F). That evidence supports the ALJ's findings.

First, Plaintiff's September 2014 function report discusses physical limitations due to her rheumatoid arthritis but reports no limitations due to her mental conditions. Plaintiff instead reported that her attention span is "unlimited," that she can complete tasks, can follow written and spoken instructions, gets along "fine" with authority figures, and can handle changes to her routine. (AR 232-33, Ex. 3E.) Second, the Psychiatric Review Technique forms at both the initial and reconsideration level characterize Plaintiff's mental impairments as medically determinable but "non severe" and producing only mild limitations. (AR 82, Ex. 1A; 98, Ex. 2A; 113, Ex. 5A; 125, Ex. 6A.) Third, Dr. Tobias's October 2014 opinion states that Plaintiff experiences mild to moderate impairment "from a strictly psychiatric standpoint" regarding her ability to: (1) "Withstand the stress of a routine work day"; and (2) "Maintain emotional stability/predictability." (AR 326, Ex. 4F.) The opinion further states that Plaintiff experiences mild impairment regarding her ability to "[i]nteract appropriately with co-workers, supervisors, and the public on a regular basis." (*Id.*) Dr. Tobias found no level of impairment regarding Plaintiff's ability to: (1) "Follow/remember simple instructions"; (2) "Follow/remember complex/detailed instructions"; (3) "Maintain adequate pace or persistence to perform one or two step simple repetitive tasks"; (4) "Maintain adequate pace or persistence to perform complex tasks"; (5) Maintain adequate attention/concentration"; and (6) "Adapt to changes in job routine." (*Id.*) Thus, Dr. Tobias noted a mild to moderate impairment in two out of nine work-related abilities, and only mild impairment in another ability.

The ALJ further cited Plaintiff's brief mental health treatment history and reported daily activities as evidence demonstrating a lack of severe impairment. (AR 23.) Again, the record supports the ALJ's findings. Treatment records from the Access Institute for Psychological Services show that Plaintiff appeared for an initial evaluation on August 20, 2013. (AR 382, Ex. 11F.) The examining therapist noted:

> [Plaintiff] is oriented to time, person, and place and presents as confident, friendly, and charming in session. She typically has blunted effect, and mood is typically euthymic. Her affect and mood are often ego-dystonic to the content being discussed. Her thoughts are organized and logical, and tend[ ] to dismiss the affective impact of the content of session when reflected by the therapist.

(*Id.*) The examiner diagnosed Plaintiff with "Major Depressive Disorder"; "Post Traumatic Stress Disorder"; and "Alcohol Use Disorder." (AR 383, Ex. 11F.)

Plaintiff next appeared for evaluation at the Access Institute on February 4, 2014. (AR 384, Ex. 11F.) Plaintiff's mood was "anxious," however, her appearance was "well-kempt," speech rate and tone were "normal," behavior was "cooperative" and "engageable," affect was "euthymic" and "appropriate," thought process was "linear," "coherent," and "goal directed," and her thought content was "appropriate." (*Id.*) Plaintiff reported chronic suicidal ideation but did not report an intent or plan to harm herself or a history of suicide attempts. Both Plaintiff's insight and judgment were deemed "good." (*Id.*) Plaintiff reported a long history of anxiety and agoraphobia, and "deep depression," but no history of hospitalization or past psychiatric medication. (AR 386, Ex. 11F.)

Plaintiff returned for treatment at the Access Institute on March 3, 2014. (AR 387, Ex. 11F.) She appeared oriented to her surroundings, with a normal mood and blunted effect. (*Id.*) The examining therapist changed Plaintiff's diagnoses, ruling out "Major Depressive Disorder," and noting that "[s]he has also recently developed panic attacks that are un-related to her prior trauma, and now meets the criteria for Panic Disorder." (AR 388, Ex. 11F.)

Plaintiff's next treatment record from the Access Institute is a "Transfer Summary" dated June 9, 2015. The summary noted:

> [Plaintiff] is currently in a stable living situation [and] maintains PT

employment. She is in the process of applying for permanent disability [and] has decided to re-start treatment.

(AR 389, Ex. 11F.) The final Access Institute treatment record is dated August 17, 2015, and states, pertinent part:

> [Plaintiff] is currently in a stable living situation and maintains steady employment in retail. She is applying for disability due to rheumatoid arthritis. She continues to struggle with the value of therapy beyond her diagnosis of PTSD. She has discontinued and restarted therapy in the past, and she tentatively intends to resume therapy as she feels more comfortable with it again.

(AR 391, Ex. 11F.) The report includes diagnoses of post-traumatic stress disorder, panic disorder, and moderate alcohol use disorder. The therapist characterized Plaintiff's condition as "stabilized." (AR 392, Ex. 11F.)

Plaintiff's only mental health treatment records consist of the above-discussed reports from the Access Institute dated August 2013, February 2014, March 2014, June 2015, and August 2015. In other words, the record shows that Plaintiff sought treatment for her mental impairments on five occasions over a two-year period and has no history of psychiatric medication or hospitalization. Further, the treatment records do not indicate any reports of *work*-related limitations due to her mental impairments.

The ALJ's citation to Plaintiff's activities of daily living is also supported by substantial evidence. Plaintiff's function reports indicate that she cannot be in crowded outdoor places that require her stand for long periods of time, but she has roommates, spends time with friends and "make[s] it a point to keep in touch," acts independently, has no problems getting along with friends, family, or neighbors, exercises, shops for groceries, does laundry, bathes daily, reads, stretches, meditates, goes for walks, prepares her own meals, runs errands, manages her finances, and uses public transportation. (AR 227-244, Exs. 3E-4E.) She reports contact with her friends "about 2 to 3 times a week" for "tea, dinner, conversations and [to] bond." (AR 240, Ex. 4E.) At the hearing in January 2017, Plaintiff testified that she prepares her own meals, bathes daily, dresses herself, takes public transportation, does household chores, shops for groceries, exercises, goes for walks, socializes with friends by going out for dinner, to the museum, or to the movies, reads, and is "trying to teach [her]self Italian." (AR 51-54.) Dr. Tobias's October 2014 evaluation

tracks Plaintiff's reported activities. (*See* AR 325, Ex. 4F ("Her usual activities include doing errands, socializing with friends, attending doctor's appointments, taking walks, reading, listening to music, taking naps, and meditating.").)

In sum, the ALJ's determination is supported by substantial evidence indicating that Plaintiff's mental impairments do not significantly limit her ability to work, but instead have only a minimal effect. Thus, the ALJ did not err in concluding at step two that Plaintiff's mental impairments were not "severe." Further, any error was harmless because, as discussed below, the ALJ considered Plaintiff's mental impairments in assessing her RFC. *See Garcia v. Comm'r of Soc. Sec.*, 587 F. App'x 367, 370 (9th Cir. 2014) (finding failure to identify the plaintiff's depression as "severe" harmless error where "the ALJ proceeded through the entire sequential analysis," and considered the plaintiff's "mental health records in assessing her residual functional capacity").

## II. Consideration of Mental Impairments in Assessing RFC

In assessing a claimant's RFC, the ALJ must "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (internal quotation marks and citation omitted). Thus, the "RFC should be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Id.* As recognized by Plaintiff, "[t]o establish reversible error at step two, a claimant must show that the ALJ's RFC analysis did not consider the contested step two impairment." (Dkt. No. 21 at 17 (citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) ("The decision reflects that the ALJ considered any limitations posed by the bursitis at Step 4. As such any error that the ALJ made in failing to include bursitis at Step 2 was harmless.")).) Plaintiff argues that the ALJ failed to consider her mental impairments "beyond the step two analysis." (Dkt. No. 21 at 17.) The Court disagrees.

In concluding step two, the ALJ clarified that "[t]he limitations identified in the paragraph B criteria [for mental functioning] are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." (AR 24.) The ALJ further noted that the RFC assessment used in steps four and five "reflects the

degree of limitation [he] found in the paragraph B mental function analysis." (*Id.*) That statement is supported by the ALJ's analysis at step four. In discussing Plaintiff's RFC, the ALJ noted that his assessment was "based on all the evidence with consideration of the limitations and restrictions imposed by the combined effects of *all* the claimant's medically determinable impairments." (AR 25 (emphasis added).) The ALJ had previously determined at step two that Plaintiff's claimed mental conditions constituted "medically determinable mental impairments." (AR 23.) The ALJ's analysis of the RFC at step four referenced Plaintiff's "posttraumatic stress disorder," "panic attacks," and "depression," as well as her activities of daily living and mental health treatment. (AR 25-29.) Indeed, the ALJ cites Dr. Tobias's October 2014 Mental Status Disability Evaluation in discussing Plaintiff's activities of daily living. (*See* AR 27 (citing AR 324, Ex. 4F).)

The ALJ's consideration of Plaintiff's mental impairments in assessing her RFC is further supported by the hearing transcript. The ALJ asked Plaintiff at the hearing whether her mental conditions "cause any work-related limitations," to which Plaintiff responded:

> Yeah, that's basically why I went into grief counseling was because I experienced panic attacks where I, I can't really, it's really difficult for me to focus on, for example, if I'm having to take care of, of a customer. All of the sudden if I start having a panic attack, it, it renders me where I, I just feel like I'm sweating. I'm really, really nervous. I feel very high levels of anxiety, and I've had to excuse myself from the floor to just, sort of, have a moment.

(AR 66.) Plaintiff went on to explain that the panic attacks "started happening more and more until I was able to go to grief counseling, and figure out why it was happening, and, and get a counselor to explain what was going on." (AR 66-67.) The ALJ then asked Plaintiff whether "that condition resolved" with counseling, and Plaintiff responded: "It's gotten better. It's not, it's not, you know, it's not over, but it's gotten better." (AR 67.) Based on Plaintiff's testimony, the ALJ instructed VE Scher as follows:

> All right, well because of that, I'll just say, Mr. Scher, that we'll, we'll limit [the Plaintiff] to simple, repetitive tasks because she said she's having problems with concentrating when she has a panic feeling.

(*Id.*)

The ALJ's recognition of a "simple, repetitive tasks" limitation is reflected in his analysis of Plaintiff's RFC at step four. (*See* AR 24-25 (concluding that Plaintiff retained the RFC "to

11

perform a range of sedentary work" with the following limitations: "can lift 10 pounds, sit for six hours in an eight-hour day, stand for two hours in an eight-hour day, . . . frequently but not constantly use the hands for handling[,]" and "*is limited to simple repetitive tasks*.") (emphasis added).) Plaintiff argues that the ALJ did not consider her mental impairments in making that determination because at step two the ALJ's decision states:

> The total record and the specific mental health exam findings do not support any significant residual functional capacity limits. However, I limited [Plaintiff] to simple repetitive tasks due to her somewhat reasonable reports of pain.

(AR 24.) Indeed, at step four the ALJ includes the "simple repetitive tasks" limitation based on Plaintiff's "rheumatoid arthritis symptoms of pain and fatigue." (AR 26.) Plaintiff's argument is unavailing, however, given that the limitation is the same as the one the ALJ recognized during the hearing as stemming from Plaintiff's symptoms related her mental impairments. In other words, the record indicates that the ALJ based that limitation—at least in part—on *consideration* of Plaintiff's mental impairments.

Accordingly, any error in failing to characterize those impairments as "severe" at step two is harmless because the ALJ subsequently considered Plaintiff's mental impairments in the RFC analysis at step four.

## CONCLUSION

For the reasons set forth above, the Court affirms the ALJ's decision denying benefits because it is supported by substantial evidence and free of legal error. The Court thus DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's motion for summary judgment.

This Order disposes of Docket Nos. 21 and 23.

**IT IS SO ORDERED.**

Dated: May 29, 2019

JACQUELINE SCOTT CORLEY
United States Magistrate Judge